IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>SHANARD BOYD | Criminal Action No.<br><br>1:23-CR-209-MLB |

**United States' Sentencing Memorandum**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Stephanie Gabay-Smith, Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum.

The Government recommends a sentence of 24 months' imprisonment, which is at the low end of the advisory Guidelines range, followed by 3 years on supervised release. The Government believes this is appropriate under the sentencing factors set forth in Title 18, United States Code, Section 3553(a).

## PROCEDURAL HISTORY

On June 13, 2023, a grand jury for the Northern District of Georgia returned a one-count indictment against Shanard Boyd (hereinafter Mr. Boyd). (Doc.12). The indictment charges Mr. Boyd with Dealing in Firearms without a License, in violation of 18 U.S.C. § 922((a)(1)(A) and 924(a)(1)(D). *Id.* Mr. Boyd was arraigned on the indictment on April 6, 2022. (Doc. 21). Mr. Boyd entered a non-negotiated plea of guilty to the indictment on December 5, 2023. (Doc. 33). The Final Presentence Investigation Report ("PSR") was prepared and provided to the

parties on March 11, 2023, 2023. Mr. Boyd is scheduled to be sentenced on March 18, 2023.

In the PSR, the Probation Officer explains that Mr. Boyd's base offense level is 12 under U.S.S.G. § 2K2.1(a)(7) (PSR ¶ 38). Further, the Probation Officer explains that since the offense involved 100-199 firearms pursuant to § 2D1.1(b)(1) the offense level is increased by 8 levels. (PSR ¶ 39). After a three-level reduction under USSG § 3E1.1 for acceptance of responsibility, Mr. Boyd's adjusted offense level is 17. (*Id.* ¶¶ 38-46). The Probation Officer determined that Mr. Boyd's has a criminal history score of 0, which places him in criminal history category I. (*Id.* ¶51). With a total offense level of 17 at a criminal history category I, the resulting advisory Guidelines sentencing range is 24 to 30 months' imprisonment. (*Id.* at Part D.). In addition, because Mr. Boyd violated 18 U.S.C. § 922 which triggers 18 U.S.C. § 3583(a) and 3583(b)(2), he may serve up to 3 years on supervised release.

## OFFENSE CONDUCT

This indictment stems from a series of firearms purchases and sales by Mr. Boyd. The purchases and sales occurred between March 2020 and May of 2023 and were investigated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

## ORIGINS OF INVESTIGATION

On March 1, 2022, ATF Group 3 conducted an undercover purchase of three fully automatic rifles. The original owner of two of the rifles was Shanard Boyd. In March of 2023, ATF was alerted to multiple firearm purchases by Georgia resident Shanard Boyd. At that time, ATF found BOYD had purchased 34 firearms during 13 separate multiple sales. Out of those 34 firearms, 13 firearm traces were done showing recoveries in Georgia, Louisiana, Pennsylvania, and Texas. ATF Atlanta opened their investigation into Mr. Boyd.

Subsequently, ATF Philadelphia contacted ATF Atlanta to discuss Mr. Boyd. Based on the recoveries in Philadelphia of firearms originally purchased by Mr. Boyd, ATF Philadelphia opened a case against him as well.

## GEORGIA INVESTIGATION

ATF obtained Mr. Boyd's 4473's from nine different FFL's (Arrowhead Pawn, Academy Sports, Mainstreet Guns, Gun Nerd Tactical, Bullseye, Hilltop Pawn, Georgia Firing Line, Dead Center, and Georgia Gun Store). Those records show Mr. Boyd purchased approximately 137 firearms in Georgia between March 26, 2020, and December 29, 2022. Of the approximately 137 firearms he purchased in Georgia, ten (10) were recovered during police investigations. Seven (7) firearms

3

were traced to crimes less than a year later—one just twelve (12) days after purchase. In addition, four (4) Glock firearm boxes matching serial numbers of firearms purchased by Mr. Boyd were recovered during a traffic stop in Pennsylvania. Mr. Boyd purchased all the Georgia firearms using his Georgia driver's license with a previously listed residence of 4292 Suwanee Mill Drive Buford, Georgia 30518 and a current address of 3790 Bogan Mill Road Buford, Georgia 30519.

On April 19, 2023, ATF determined through the ATF Federal Licensing System that Mr. Boyd was not a Federal Firearms Licensee (FFL) and did not have a pending application to become an FFL. In view of that fact, ATF determined that Mr. Boyd could not legally be engaged in the business of dealing in firearms in the United States.[1]

On May 17, 2023, agents received a call from an employee of Arrowhead Pawn Shop (APS) that advised that Mr. Boyd arrived at the store to purchase additional firearms. (PSR ¶ 20). Agents then responded to APS to conduct surveillance. *Id*.

---

[1] Mr. Boyd is not otherwise a prohibited person.

Agents arrived at APS and contacted the APS employee. The APS employee stated that Mr. Boyd wished to purchase three (3) Glock handguns and a Mini Draco pistol. The employee gave a description of the two males to ATF agents.

Agents observed Mr. Boyd and his nephew, Mr. Jones, exit APS with the firearms and get into a black GMC Sierra pick-up truck bearing Georgia license plate number XHU654. *Id*. Before exiting the parking lot, Mr. Boyd went over to a red Toyota Prius and briefly spoke with the driver. *Id*. As Mr. Boyd exited the APS parking lot, the red Toyota Prius bearing Pennsylvania license plate RR2M21 followed Mr. Boyd. *Id*. Mr. Boyd's pick-up truck and the red Prius pulled in front of the Family Dollar in the same parking lot as APS. Mr. Boyd exited his vehicle, pointed at the red Prius and had a brief conversation with the unidentified person driving the red Prius. *Id*. Mr. Boyd then got back into his vehicle with Mr. Jones and drove off. *Id.* The red Prius then drove around one of the agent's vehicles several times and looked inside. *Id.* The red Prius then drove to the Waffle House on Tara Blvd. *Id*. Mr. Boyd continued to drive around the APS parking lot and subsequently left the area. *Id*. Mr. Boyd did not meet back up with the Red Prius. *Id*.

Mr. Boyd then drove to a Texaco gas station located at 5991 Old Dixie Rd. (PSR ¶ 21). While at the gas station, Mr. Boyd was seen on the phone making various

calls and went into the gas station. *Id*. Mr. Boyd then approached one of the agent's vehicles and asked if the agent was trying to rob him. *Id*. Mr. Boyd then got into the driver seat of his truck and exited the Texaco gas station. *Id*.

Agent followed Mr. Boyd to a Shell gas station located at 2300 Sigman Rd. Conyers, GA., where he was arrested without incident. (PSR ¶ 22). The firearms that Mr. Boyd purchased from APS were seized. *Id*.

After his arrest, Mr. Boyd was Mirandized and agreed to speak with agents. (PSR ¶ 30). He claimed that he was buying the firearms for his personal use and to protect his family. *Id*. He also stated that he had bought roughly thirty (30) firearms in the last couple years and that he has only given one (1) or two (2) away as a gift. *Id*. Mr. Boyd stated he sold firearms back to Pawn Shops and one (1) to his brother-in-law in Savannah, GA. *Id*. He also claimed he had firearms stolen from his vehicle in the winter of 2020 and reported it to Flowery Branch Police Department in Hall County(verified). *Id*. Mr. Boyd admitted that he had the guns that he purchased at his house located at 779 Sara Meadow Rd. Loganville, GA 30052 inside a safe. *Id*. He also informed agents that he builds firearms. *Id*. Mr. Boyd said he ordered firearms parts and received the parts at his home address.

When agents asked Mr. Boyd about the red Prius, he claimed it was his uncle who was a "sheriff." (PSR ¶ 24). When agents asked for his uncle's name, Mr.

Boyd would not reveal the name and said that his "uncle" was retired. *Id*. Mr. Boyd denied any knowledge of how his firearms were recovered in other states. Mr. Boyd denied knowing the possessors of the firearms he purchased and would not say how many he had transferred.  He would not reveal any further information about the firearms. Agents again asked Mr. Boyd about the identity of the unidentified person in the red Prius, he claimed he did not want to reveal the identity as he was fearful of what might happen if he revealed that information. [1] Mr. Boyd subsequently gave the name of the driver of the red Prius as Lateef Butler.

Agents applied for and received a federal search warrant for Mr. Boyd's home and his cellphone.  Agents recovered approximately one hundred and fifteen (115) bills of sale for firearms that Mr. Boyd supposedly sold from 2019 to April of 2023, six (6) firearms, assorted ammunition, and several magazines.  A number of the firearms from the multiple sales were listed on Mr. Boyd's private sale paperwork.  The bill of sales and 4473's are evidence of frequent sales showing Mr. Boyd was "engaged in the business of dealing in firearms."  Further, on his cellphone there were numerous photos of firearms. Of note, the last text message on his phone was between Lateef Butler and Mr. Boyd.  In that text the recipient was told to delete all information between the two.

## ARGUMENT

**1. THE COURT SHOULD IMPOSE A GUIDELINES SENTENCE OF 24 MONTHS, FOLLOWED BY 3 YEARS ON SUPERVISED RELEASE.**

The Court in sentencing Mr. Boyd must first correctly calculate the applicable Guidelines range, and then it may weigh the § 3553(a) factors in calculating the appropriate sentence.[2] "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quotation marks omitted). A sentence of 24 months' imprisonment, which is the low end of Mr. Boyd' current Guidelines range, is reasonable and in accord with the factors listed in § 3553(a).

Mr. Boyd' repeated purchases and sales of firearms without a license are serious crimes that must be punished to, among other things, promote respect for

---

[2] Section 3553(a) requires district courts to consider the following factors in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to provide general deterrence; (C) to provide specific deterrence; and (D) to provide the defendant with appropriate rehabilitation options; (3) the kinds of sentences available; (4) the advisory Guidelines range; (5) the Guidelines' policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a)(1)–(7).

8

the law and provide general and specific deterrence. Furthermore, the nature and circumstances of Mr. Boyd' offense and his history and characteristics provide reasons to impose a sentence of 24 months' imprisonment.

Mr. Boyd made numerous purchases and sales of firearms to individuals in and outside of the state of Georgia. He did not care who he sold the firearms to or used any discernment as to how these transactions occurred. As we now know some of the firearms he sold were recovered at crime scenes in various states. Mr. Boyd's conduct is very serious and should be punished.

As evidenced by the PSR, Mr. Boyd' does not have any criminal history that would require the assessment of criminal history points. (PSR ¶¶ 48-51). However, as a veteran and just as a citizen, he was aware that he had a duty to refrain from such activity. Mr. Boyd purchased and sold firearms at a high volume without thought to who he was selling them to or the manner of the sales. In the charged offense, he purchased firearms that were to go to the driver of the red Prius. The driver of the Prius sat in the parking lot of APS while Mr. Boyd went inside and purchased the firearms. Mr. Boyd never asked himself why the driver did not get the guns himself nor did he care. This was a business for Mr. Boyd and all he cared about was getting paid. His conduct clearly indicates he made a conscious decision to **not** adhere to the law.

Based on the information contained in the PSR it appears that Mr. Boyd has mental health issues. (PSR ¶¶ 69-71). This fact is one that the court can take into consideration when fashioning a sentence. However, it is the Government's position that this fact does not warrant a variance or downward departure from the advisory Guideline range. In fact, it is even more of a reason to sentence Mr. Boyd to a guidelines sentence. A person who has mental health issues should not have firearms or do anything that involves firearms. By his conduct Mr. Boyd put the citizens of Georgia and in other states at risk. His firearms sales became part of various crimes in Georgia, Texas, Louisiana and Pennsylvania. (PSR ¶¶ 11-19). He continuously committed this crime and did not think or care what effect his actions would have.

Mr. Boyd, through counsel, is hoping to receive a downward departure pursuant to U.S.S.G. 5H1.11 due to his military service. It is the Government's position that his military service does not distinguish his case from the typical case covered by the guidelines. *U.S.S.G. 5H1.11*. Mr. Boyd served our country, but the fact that he served our country did not affect his decision to commit the offense.

Mr. Boyd committed the offense, and like all others should not receive a downward departure solely because of his service.³

The Government has reviewed Mr. Boyd's case in light of the 18 U.S.S.G. 3553(a) factors. After weighing all these factors, the Government recommends that Mr. Boyd receive a sentence of 24 months' incarceration, which is at the low end of his Guidelines range, and 3 years supervised release. Such a sentence reflects the seriousness of Mr. Boyd's crime, promotes respect for the law, provides just punishment for Mr. Boyd's transgressions, and hopefully will deter him and others similarly situated from committing like offenses.

---

³ Counsel also is requesting a downward departure pursuant to U.S.S.G. 5K1.1. Government counsel will oppose this request and provide explanation to the court at sentencing.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 24 months' imprisonment, which is the low end of the Guidelines range, followed by 3 years on supervised release, all pursuant to the factors listed in 18 U.S.C. § 3553(a).

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/STEPHANIE GABAY-SMITH
*Assistant United States Attorney*
Georgia Bar No. 663519
Stephanie.Smith@usdoj.gov

600 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
Telephone: (404) 581-6000
Facsimile: (404) 581-6181

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Katyrna Spearman

March 11, 2024

/s/ STEPHANIE GABAY-SMITH

STEPHANIE GABAY-SMITH

*Assistant United States Attorney*